1
2
3
4                        UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    BOOBULI'S LLC,                          Case No.  20-cv-07074-WHO

8                    Plaintiff,
                                             **ORDER DENYING MOTION TO**
9          v.                                **DISMISS**

10   STATE FARM FIRE AND CASUALTY            Re: Dkt. No. 35
     COMPANY, et al.,
11
                     Defendants.
12
          In March 2020, all nonessential California business were required to substantially reduce

13   or shut down their business operations in an effort to slow the spread of COVID-19.  Plaintiff

14   Boobuli's LLC ("Boobuli's") shut down its business, a coffee shop and restaurant located in

15   Walnut Creek, California, for at least three months and was unable to reopen until June 2020, with

16   reduced hours and employees.  Despite a decrease in its business operations, Boobuli's alleges that

17   defendant State Farm, from which it purchased business risk insurance in June 2019, has failed to

18   make premium adjustments and returns and has continued to collect premiums on rates approved

19   prior to the unforeseen pandemic-related reduction in business operations.  Boobuli's brings this

20   action on behalf of itself and all other similarly situated California business owners insured by

21   State Farm, seeking to remedy State Farm's alleged unfair business practice of collecting and/or

22   failing to return excess premiums in violation of California's public policy.

23        State Farm moves to dismiss the Complaint on grounds that California's Insurance

24   Commissioner has exclusive original jurisdiction over the matter and that State Farm is immune

25   from this type of suit challenging the application of rates approved by the Commissioner.

26   Boobuli's responds that is it not challenging State Farm's rates as approved by the Commissioner,

27   but is instead challenging the excessive premiums charged to it and other similarly situated

28

United States District Court
Northern District of California

United States District Court
Northern District of California

businesses due to State Farm's misapplication of the approved rates given circumstances caused by the pandemic.

Following the oral argument on State Farm's motion, I advised the parties that I would "review any information received from the Insurance Commissioner" requested by the Honorable Edward M. Chen in the *Rejoice! Coffee Company, LLC v. The Hartford Financial Services Grp.* case, Case No. 20-cv-06789-EMC.  Dkt. No. 49.  State Farm opposed waiting on the Insurance Commissioner's opinion in *Rejoice!,* contending that the claim here – that State Farm did not adjust premiums enough or issue sufficient rebates under the Insurance Commissioner's COVD-related bulletins – was different than the question submitted to the Commissioner in *Rejoice!* (challenging an insurer's "refusal to adjust" insurance premiums).  *Compare* Dkt. No. 52 *with* Dkt. No. 61 in Case No. 20-cv-06789.  State Farm proposed that I submit a different question to the Commissioner, concerned with an insurer's alleged failure to adjust enough.  Dkt. No. 52.  Having now read the Insurance Commissioner's response in *Rejoice!* (filed September 17, 2021), as well as the briefs filed in this case, I find that the claims asserted by Boobuli's are not within the exclusive jurisdiction of the Insurance Commissioner, although the relief available under the claims may be impacted by future actions by the Commissioner.

Turning to the merits of the claims alleged, most of State Farm's remaining arguments regarding the sufficiency of Boobuli's claims do not warrant dismissal.  Even if there is a valid contract between the parties, Boobuli's is allowed to plead an unjust enrichment claim in the alternative under Rule 8.  Boobuli's implied covenant claims are sufficiently pleaded based on State Farm's alleged failure to use its discretion to adjust premiums in good faith under the circumstances.  However, State Farm's motion to dismiss claims against the parent company of State Farm General that issued the Policies, State Farm Mutual, is GRANTED with leave to amend.  Boobuli has insufficiently pleaded these claims: it simply names State Farm Mutual as a party but fails to allege its role in the unfair practices or whether it retained something to which it was not entitled.  The motion to dismiss is otherwise DENIED.

**BACKGROUND**

## I.      BOOBULI'S 2019 AND 2020 POLICIES

Boobuli's is a California limited liability company that operates a café, Caffé California, in Walnut Creek, California.  First Amended Complaint ("FAC") [Dkt. No. 25] ¶ 13.  State Farm General Insurance Company ("State Farm General") and State Farm Mutual Automobile Insurance Company ("State Farm Mutual") (collectively "State Farm") are engaged in the business of marketing and selling insurance products in California and other states.  *Id.* ¶¶ 14-17.[1]  In June 2019, Boobuli's purchased business risk insurance form State Farm to insure its business operations and its commercial premises.  *Id.* ¶ 34; *see* Defendant's Request for Judicial Notice ("RJN") [Dkt. No. 24], Ex. A (copy of policy number 97- BU-J516-6 for the time period June 1, 2019 to June 1, 2020, including all declarations pages, forms and endorsements) ("2019 Policy").

The premium collected on the 2019 Policy was set prior to the COVID-19 pandemic.  *Id.* ¶ 35.  Boobuli's alleges that the 2019 Policy terminated on June 1, 2020, the day that the 2020 Policy went into effect, covering June 1, 2020 through May 31, 2021.  *Id.* ¶¶ 41, 50; RJN, Ex. B (copy of policy number 97-BU-J516-6 for the time period June 1, 2020 to June 1, 2021, including all declarations pages, forms and endorsements) ("2020 Policy").  Pursuant to California law, State Farm General filed the rates it used to calculate premiums under the Policies with the Insurance Commissioner and the California Department of Insurance ("DOI") approved those rates effective December 15, 2018.  RJN, Ex. C (State Farm General Insurance Company's Rate Revision filing for its California Commercial Multi-Peril Mercantile/Service Program with the DOI); RJN, Ex. D (DOI's approval of State Farm General Insurance Company's Rate Revision filing for its California Commercial Multi-Peril Mercantile/Service Program with the DOI effective as of December 15, 2018).

## II.     DOI BULLETINS

On April 13, 2020, the DOI issued a bulletin to insurers recognizing that "the COVID-19 pandemic caused an unprecedented challenge for California's businesses" and had "severely

---

[1] Boobuli's named State Farm Fire and Casualty Company in its original Complaint.  That entity is not named in the FAC.

United States District Court
Northern District of California

1    curtailed activities of policyholders in both personal and commercial lines," so that "projected loss

2    exposures of many insurance policies have become overstated or misclassified."  FAC ¶ 42; *id.*,

3    Ex. A (2020-3 Bulletin) at 1.

4         "To protect consumers and to provide consistent direction to the insurance industry

5    regarding misclassifications of risk resulting from the COVID-19 pandemic," Insurance

6    Commissioner Ricardo Lara ordered "insurers to make an initial premium refund for the months

7    of March and April to all adversely impacted California policyholders," including those in

8    commercial liability insurance, "as quickly as practicable, but in any event no later than 120 days

9    after the date of this Bulletin," *i.e.*, August 11, 2020.  2020-3 Bulletin at 1-2.  Commissioner Lara

10   "grant[ed] each insurer reasonable flexibility in determining how best to quickly and fairly

11   accomplish the refund of premium to policyholders," adding that "[i]nsurers may comply with the

12   premium refund order by providing a premium credit, reduction, return of premium, or other

13   appropriate premium adjustment."  *Id.* at 2.  "Insurers may refund premium without prior approval

14   by the [DOI] if they apply a uniform premium reduction for all policyholders in an individual line

15   of insurance, for recent, current, and upcoming policy periods or any portion thereof."  *Id.*

16        "Alternatively, insurers may refund premium without prior approval by the [DOI] by

17   reassessing the classification and exposure bases of affected risks on a case-by-case basis for

18   recent, current, and upcoming policy periods or any portion thereof."  2020-3 Bulletin at 2.

19   "Whether choosing one of the above-described approaches, or an alternative approach, insurers

20   shall, no later than 120 days after the date of this Bulletin, provide each affected policyholder, if

21   applicable, with a notification of the amount of the refund, a check, premium credit, reduction,

22   return of premium, or other appropriate premium adjustment."  *Id.*at 3.  Commissioner Lara also

23   ordered every insurer "to report to the [DOI] within 60 days . . . all actions taken and contemplated

24   future actions to refund premiums in response to or consistent with this Bulletin."  *Id.*

25        On May 15, 2020, the DOI issued a second bulletin, extending "the directives set forth in

26   Bulletin 2020-3 to reduce premium in the affected lines of insurance where the projected loss

27   exposures have become overstated or misclassified . . . through May 31, 2020."  FAC, Ex. C

28   (2020-4 Bulletin) at 2.  The 2020-4 Bulletin also required insurers to report to the DOI

United States District Court
Northern District of California

4

1    "information with respect to any premium adjustments for May 2020." *Id.*

2          On June 25, 2020, the DOI issued a third bulletin, extending the directives and reporting

3    requirements of the previous two bulletins to June 2020 and to "any months subsequent to June if

4    the COVID-19 pandemic continues to result in projected loss exposures remaining overstated or

5    misclassified." FAC, Ex. D (2020-8 Bulletin) at 2. The 2020-8 Bulletin clarified that, "[t]he

6    extension of reporting required by this Bulletin 2020-8 does not change the previous deadline for

7    insurers to provide direct relief to policyholders for March, April, and May premiums by no later

8    than August 11, 2020." *Id.*

9          On December 3, 2020, the DOI amended Bulletin 2020-8 to extend the directives and

10   reporting requirements set forth in Bulletins 2020-3 and 2020-4 "to include premium relief for any

11   months subsequent to June as conditions warrant." FAC, Ex. F (Amended Bulletin 2020-8) at 1.

12         On March 11, 2021, the DOI issued Bulletin 2021-3, reporting that "[t]o date, private

13   passenger automobile insurance companies have returned more than $1.75 billion in premium for

14   2020 to California drivers," but "based on extensive analysis of data received, the Department's

15   review of this loss data demonstrates the premium relief that insurance companies provided to

16   their policyholders was insufficient, leaving consumers paying inflated premiums while they

17   continue to experience reduced risk of loss." Plaintiff's Supplemental Request for Judicial Notice

18   in Opposition to Defendants' Motion to Dismiss [Dkt. No. 45] Ex. A (2021-3 Bulletin) at 1.[2]

19   Thus, the 2021-3 Bulletin "directs insurance companies," not just auto insurance companies, "to

20   take the following actions: (i) "Do more to return additional premium relief from March 2020

21   forward, and report these additional premium returns to the Department"; (ii) "Communicate with

22   their policyholders about how they will return premiums, as well as options available to

23   consumers to reduce their ongoing premium"; and (iii) "Consult this bulletin when seeking

24   clarification regarding the directives and reporting requirements set forth here and in Bulletins

25   2020-3, 2020-4, and 2020-8." *Id.*

26

27   [2] Boobuli's request for judicial notice of the 2021-3 bulletin is GRANTED. *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("A court may take judicial notice of

28   'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts noticed are not "subject to reasonable dispute.").

United States District Court
Northern District of California

### III.    STATE FARM'S RESPONSES TO THE BULLETINS AND ALLEGED CONTINUATION OF EXCESSIVE PREMIUMS

In response to the 2020-3 Bulletin, State Farm General reported to the DOI that, among other things, it will apply a "uniform reduction of 40% of the rated liability exposure amount for all [businessowner] customers, for one annual renewal cycle," with "a target effective date of September 15, 2020 for new and renewal business."  FAC, Ex. B (State Farm Response to 2020-3 Bulletin) at 2.  "In addition for all customers whose policies terminate between March 20 and August 31, 2020, [State Farm General] will return 25% of the premium owed for coverage that was in force during the period of March 20 to May 31."  *Id.*  It reiterated the same in response to the 2020-8 Bulletin.  *See id.,* Ex. E (State Farm Response to 2020-8 Bulletin) at 2 ("[State Farm General] is applying a uniform reduction of 40% of the rated liability exposure amounts to all customers, for one annual renewal cycle," and "[f]or all customers whose [businessowners] policies terminated between March 20 and August 31, 2020, [it] is refunding 25% of the premium owed for coverage that was in force during the period of March 20 to May 31.")

Boobuli's alleges that, despite having renewed coverage on the expiration of the 2019 Policy, it had received no premium reduction, as indicated in State Farm's Response to the 2020-3 Bulletin. FAC ¶¶ 51, 57; *id.*, Ex. B (State Farm Response to 2020-3 Bulletin) at 2 ("uniform reduction of 40% of the rated liability exposure amount for all [businessowner] customers, for one annual renewal cycle," with "a target effective date of September 15, 2020 for new and renewal business").  It further alleges that the 2019 Policy "terminated" on June 1, 2020, but State Farm nonetheless failed to return to it any portion of the premium paid for coverage between March 20 and May 31, 2020.  *Id.* ¶¶ 45, 50; *id.*, Ex. B (State Farm Response to 2020-3 Bulletin) at 2 ("In addition for all customers whose policies terminate between March 20 and August 31, 2020, [State Farm General] will return 25% of the premium owed for coverage that was in force during the period of March 20 to May 31.").

At the time that the 2020 Policy went into effect, on June 1, 2020, Boobuli's business had already been adversely impacted by mandatory closure during the latter part of March and for all of April and May 2020.  FAC ¶ 58.  The business was still mandatorily closed on June 1, 2020, and thus "providing a concrete demonstration of a policy whose projected loss exposures have

United States District Court
Northern District of California

become overstated or misclassified." *Id.* ¶ 59.  Nevertheless, Boobuli's alleges, State Farm General "failed to appropriately adjust [the] premiums under the 2020 Policy" and instead "actually raised [the] premium under the 2020 Policy, from $1,610 to $1,634." *Id.* ¶ 60.

"State Farm General [] also failed to notify [Boobuli's] of any intention or obligation to make a premium adjustment reflecting the overstated projected loss exposures on the basis of which Plaintiff's current premiums were calculated.  In fact, State Farm's only communication to Plaintiff concerning the recent directives from the Department of Insurance was a May 4, 2020, letter informing Plaintiff that State Farm could provide additional coverage for pandemic-related use of personal vehicles." FAC ¶ 62.

"Given the fact that [Boobuli's] business is still severely impacted by the pandemic and the projected loss exposures underlying the calculation of [the] premiums therefore remain significantly overstated," the FAC alleges that "State Farm General was obligated to adjust [the] premium due under the 2020 Policy and/or to return excess premium amounts paid between June 2020 and the present." FAC ¶ 65.  To date, however, it asserts that "State Farm General has failed to adjust [the] premiums due under the 2020 Policy," and has also "failed to return any premium amounts paid under this Policy." *Id.* ¶ 66.  It "seeks to restore excessive, unfair premiums (and the earnings thereon), through disgorgement, restitution and a constructive trust, and enjoin State Farm from continuing to charge and retain excessive, unfair premiums." *Id.* ¶ 67.

Based on these allegations, Boobuli's brings the following four causes of action ("COA"): breach of the covenant of good faith and fair dealing on the 2019 and 2020 Policies (COA 1 and 2); (violation of business and Professions Code § 17200, *et seq.* ("UCL") (COA 3); and unjust enrichment/restitution (COA 4).  It brings these claims on behalf of "All persons who paid insurance premiums to State Farm for property and casualty insurance policies, covering any period from March 16, 2020, through the present, whose business operations were substantially reduced or eliminated due to the COVID-19 pandemic." FAC ¶ 68.  Boobuli's seeks: (i) an order certifying the proposed class; (ii) an order declaring that State Farm violated its and class members' rights; (iii) an order enjoining State Farm "from charging premiums in excess of a fair rate of return based on pre-COIVD-19, Shelter-in-Place rate calculations"; and (iv) equitable

7

1  relief, including restitution for unjust enrichment and/or disgorgement, restitution, and a

2  constructive trust for the unearned premiums and State Farm's investment returns on those

3  unearned premiums.  *Id.*, Prayer for Relief ¶¶ A–D.

### LEGAL STANDARD

5  A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a

6  challenge to the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts

7  are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited

8  jurisdiction."  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party

9  invoking the jurisdiction of the federal court bears the burden of establishing that the court has the

10  requisite subject matter jurisdiction to grant the relief requested.  Id.  A challenge pursuant to Rule

11  12(b)(1) may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial

12  attack, the jurisdictional challenge is confined to the allegations pled in the complaint.  *Wolfe v.*

13  *Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  The challenger asserts that the allegations in the

14  complaint are insufficient "on their face" to invoke federal jurisdiction.  *Safe Air Safe Air for*

15  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  To resolve this challenge, the court

16  assumes that the allegations in the complaint are true and draws all reasonable inference in favor

17  of the party opposing dismissal.  *Wolfe*, 392 F.3d at 362.

18  Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss if a claim

19  fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

20  dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its

21  face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when

22  the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

23  is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

24  omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.

25  While courts do not require "heightened fact pleading of specifics," a claim must be supported by

26  facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555,

27  570.

28

United States District Court
Northern District of California

**DISCUSSION**

**I.    EXCLUSIVE JURISDICTION**

State Farm contends that none of Boobuli's claims can proceed in this court because California law, specifically sections 1860.1 and 1860.2 of the California Insurance Code, confer exclusive original jurisdiction over insurance rate issues to the Insurance Commissioner.  As State Farm interprets the FAC, Boobuli's complaint is that State Farm General's premiums based on the rates previously approved by the Insurance Commissioner are too high, and thus this lawsuit directly implicates the Commissioner's exclusive original jurisdiction over rates.  To understand State Farm's argument, some background regarding insurance regulation in California is required.

Prior to the passage of Proposition 103 in 1988, California was a so-called "open rate" state, where rates were set by insurers without prior or subsequent approval by the Insurance Commissioner.  *Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th 750, 752 (2000).  "The Commissioner was empowered to prohibit an insurance rate only if a reasonable degree of competition did not exist in the area and the rate was found to be excessive, inadequate or unfairly discriminatory."  *Id.* (citations and formatting omitted).  The passage of Proposition 103 made numerous fundamental changes in the regulation of automobile and other types of insurance, retaining some sections of the Insurance Code and modifying others.  *Id.*  Now, "[i]nsurance rates subject to this chapter," including the type of insurance at issue in this case, "must be approved by the commissioner prior to their use."  Cal. Ins. Code. § 1861.01(c).  An insurer "cannot charge a rate unless the rate is part of a rate plan which has been approved in advance by the [DOI]."  *MacKay v. Superior Ct.*, 188 Cal. App. 4th 1427, 1431 (2010), *as modified* (Oct. 20, 2010), *as modified* (Oct. 22, 2010).

The Insurance Code bars the Commissioner from approving rates that are "excessive, inadequate, unfairly discriminatory, or otherwise in violation of this chapter."  Cal. Ins .Code § 1861.05(a)).  Members of the public may challenge rates both before and after approval in administrative proceedings from which judicial review is available.  *See* Cal. Ins. Code §§ 1858, 1858.6, 1861.05(c).  Once an insurance rate is approved, an insurer must charge the approved rates or face substantial penalties.  *See* Cal. Ins. Code §§ 1858.07(a), 1861.01(c).

United States District Court
Northern District of California

1    Most relevant to State Farm's exclusive jurisdiction argument, section 1860.1 of the

2    Insurance Code states: "[n]o act done . . . pursuant to the authority conferred by this chapter shall

3    constitute a violation of or grounds for prosecution of civil proceedings under any law of this State

4    heretofore or hereafter enacted which does not specifically refer to insurance." Cal. Ins. Code §

5    1860.1.  The statute was part of the McBride–Grunsky Insurance Regulatory Act of 1947, enacted,

6    in the first instance, in order to immunize insurers from antitrust laws.  *See Donabedian v.*

7    *Mercury Ins. Co.*, 116 Cal. App. 4th 968, 980 (2004), *as modified on denial of reh'g* (Mar. 30,

8    2004); *see Villanueva v. Fid. Natl. Title Co.*, 11 Cal. 5th 104, 121 (2021) ("As this history reveals,

9    and as numerous courts have observed over time, the language of these statutes was originally

10    drafted to ensure that insurers would not be subject to antitrust liability for consulting with each

11    other before establishing their rates.").

12    However, a different section of the Insurance Code, added by Proposition 103, provides

13    that "[t]he business of insurance shall be subject to the laws of California applicable to any other

14    business, including, but not limited to ... unfair business practices laws." Cal. Ins. Code §

15    1860.03(a).  "The weight of authority in this district and the California Court of Appeals

16    harmonizes Sections 1860.1 and 1860.03(a) by narrowly construing the Section 1860.1 immunity

17    upon which [State Farm] relies." *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1082 (N.D.

18    Cal. 2012) (citing *MacKay*, 188 Cal. App. 4th at 1449–50 and *Wahl v. Am. Sec. Ins. Co.*, C 08-

19    0555 RS, 2010 WL 4509814, at *2-3 (N.D. Cal. Nov. 1, 2010)).  As harmonized, "challenges to

20    the reasonableness of an approved rate fall within the exclusive ambit of the chapter and are

21    exempt from the requirements of other laws." *Wahl*, 2010 WL 4509814, at *3 (discussing the

22    statutory construction articulated in *MacKay*).  On the other hand, "Insurance Code section 1860.1

23    protects from prosecution under laws outside the Insurance code only acts done, actions taken and

24    agreements made pursuant to the authority conferred by the ratemaking chapter.  It does not

25    extend to insurer conduct not taken pursuant to that authority." *Wahl*, 2010 WL 4509814, at *3

26    (quoting *MacKay*, 188 Cal. App. 4th at 1449) (alterations and internal quotation marks omitted).

27    In short, where a plaintiff's claim does not involve a challenge to a rate approved by the DOI or

28    DOI's ratemaking authority, the claim does not fall within the exclusive jurisdiction of the DOI

and the plaintiff may bring the claim in court in the first instance.  *MacKay*, 188 Cal. App. 4th at 1449.

State Farm analogizes Boobuli's claims to the ones at issue in *Walker* and *MacKay*, where exclusive jurisdiction over ratemaking precluded suits against insurers challenging premiums as excessive.  *Walker*, 77 Cal. App. 4th at 756; *MacKay*, 188 Cal. App. 4th at 1443.  Boobuli's responds that State Farm mischaracterizes the lawsuit as challenging approved rates and the ratemaking process.  It contends that this lawsuit challenges State Farm's unfair post-COVID-19 conduct in the *application* of its rate plan, much like the claims at issue in *Donabedian* and *Wahl*, which did not fall within the Insurance Commissioner's exclusive jurisdiction.  *Donabedian*, 116 Cal. App. 4th at 993; *Wahl*, 2010 WL 4509814, at *3.  I will address each of those cases in turn.

In *Walker*, a class of automobile insurance customers filed suit against multiple insurers and the Insurance Commissioner seeking damages or disgorgement of allegedly excessive premiums that the insurers had been authorized to collect.  The complaint supported its claim of "excessive" premiums "with numerous factual allegations regarding industry trends and rates of return earned by individual insurers."  *Walker*, 77 Cal. App. 4th at 753.  "Each cause of action against the insurers sought the redetermination of the premium rates in effect since September 1994 in accordance with certain statutory and regulatory criteria and a refund of the premiums collected in excess of the redetermined amounts."  *Id.*  The trial court dismissed the action against the insurers on the basis of Insurance Code section 1860.1.  *Id.* at 752.  The California Court of Appeal affirmed, finding that "an insurer's action of collecting premiums consistent with an approved rate" did not provide a basis for liability.  *Id.* at 757.

Similarly, in *MacKay*, the plaintiff challenged certain rating factors used by an automobile insurer.  After the record revealed that the rating factors were approved by the DOI, the California Court of Appeal addressed "whether the approval of a rating factor by the DOI precludes a civil action against the insurer challenging the use of that rating factor," concluding "that it does."  *MacKay*, 188 Cal. App. 4th at 1434, 1443.  *MacKay* noted the "limited nature" of its holding, cautioning that section 1860.1 "protects from prosecution under laws outside the Insurance Code only 'act[s] done, action[s] taken [and] agreement[s] made pursuant to the authority conferred by'

11

the ratemaking chapter.  It does not extend to insurer conduct *not* taken pursuant to that authority."  *Id.* at 1449 (emphasis in original).

MacKay cited *Donabedian* as an example of a case not barred by exclusive jurisdiction.  *Donabedian* acknowledged that actions challenging ratemaking authority of DOI fall within Insurance Commissioner's exclusive jurisdiction pursuant to section 1860.01, but concluded that the provision did not apply because the UCL claim before it did not involve ratemaking.  *Donabedian*, 116 Cal. App. 4th at 995.  Instead, plaintiff's UCL claim challenged the insurer's practice of using lack of prior car insurance as a factor in determining eligibility for the Good Driver rate.  *Id.*  Quoting from the Insurance Commissioner's amicus brief describing the two-step ratemaking process, the court explained:

> [Plaintiff's] claim does not involve any of these ratemaking steps.  A separate concern is whether the optional rating factors, as *applied*, comply with the Insurance Code.  This is a critical distinction, and it is the issue that was before the trial court in the present case.  It is possible for an insurance carrier to file with the Department a rate filing and class plan that satisf[y] all of the ratemaking components of the regulations, and still result in a violation of the Insurance Code as *applied*.  Such a [situation] would not involve a question of rates, but rather, it could easily involve the very separate, factual question of how the components of the class plan are applied toward members of the public.

*Id.* at 993 (emphasis in original).

The Hon. Richard Seeborg reached a similar conclusion in *Wahl*.  In that case, plaintiff alleged that the insurer had unfairly charged additional force-placed insurance premiums during a period of time when the insured homeowners would have had sufficient coverage without paying the additional premiums.  *Wahl*, 2010 WL 4509814, at *3.  Judge Seeborg rejected the insurer's argument that the UCL claim improperly attacked an insurance rate approved by the Commissioner.  He found that a "fair reading of Wahl's UCL claim as alleged and as defended in her many opposition motions supports her argument that the claim is directed at [the insurer's] allegedly unfair conduct and not at the Commissioner's rate."  *Id.*  *MacKay* and *Walker* "were limited to situations where a plaintiff challenged a charged rate as excessive per se, and effectively asked the Court to calculate an alternative rate it deemed more 'fair,'" and that was "not the situation" in *Wahl*.  *Id.*

United States District Court
Northern District of California

1    That is not the situation here either.  The underlying challenged conduct is not State

2    Farm's charging of an approved rate.  Rather, it is State Farm's unfair *application* of its approved

3    rate plan during a specific period, aligning this case with the circumstances in *Donabedian* and

4    *Wahl*.  Boobuli's alleges that "State Farm is aware that the shelter-in-place orders, social

5    distancing guidelines, and resulting reduction in business activity has substantially reduced or

6    eliminated insured business operations through California," yet "State Farm continued to collect

7    and retain excessive, unfair premiums from Boobuli's and other businesses."  FAC ¶¶ 26 – 27.

8    Boobuli's contends that "State Farm's *conduct* contravenes the law and public policy, is unfair to

9    policyholders, results in arbitrary insurance practices, interferes with a competitive insurance

10   marketplace, and denies fair, available, and affordable insurance for all Californians."  *Id.* ¶ 11

11   (emphasis added).

12   State Farm attempts to distinguish *Donabedian*, *Wahl*, and other cases in that line, on

13   grounds that those cases involved allegedly unlawful conduct separate from and independent of

14   the charging of premiums based on approved rates.  Reply 7.  In *Donabedian*, plaintiff challenged

15   the insurer's practice that was prohibited by the Insurance Code (reliance on the absence of prior

16   insurance for determining eligibility for a Good Driver discount).  116 Cal. App. 4th at 992.  In

17   *Wahl*, plaintiff challenged the insurer's practice of force-placing insurance when other coverage

18   may have been in place.  2010 WL 4509814 at *3.  Another case in this District similarly involved

19   force-placed insurance and alleged "kickbacks" received by the insurer.  *See Ellsworth v. U.S.*

20   *Bank, N.A.*, 908 F. Supp. 2d 1063, 1082 (N.D. Cal. 2012).

21   While I agree that those cases involved a more clearly distinctive act challenged under the

22   UCL, I am not convinced that necessarily sets the bar higher for what plaintiffs can bring to court

23   and what falls within the exclusive jurisdiction of the DOI.  Notably, in rejecting the insurer's

24   argument that plaintiff "really is challenging the premiums," the Hon. Laurel Beeler in *Ellsworth*

25   emphasized that "[j]ust because the damages are based on increased costs incurred as a result of

26   the alleged kickback scheme does not transform a challenge to conduct and practices into a

27   challenge to the premiums."  *Ellsworth*, 908 F. Supp. 2d at 1083.  In this case, damages based on

28   State Farm's alleged misapplication of the approved rates during a specific time period (post-

United States District Court
Northern District of California

13

COVID) does not transform Boobuli's challenge into one about the premiums itself.  That may be a thin line in State Farm's view, but courts have repeatedly held that section 1860.1 must be "narrowly constru[ed]."  *Id.* at 1082; *MacKay*, 188 Cal. App. 4th at 1443 ("Our task, therefore, is to harmonize a broad statute, subjecting the entirety of the business of insurance to all California laws governing business, and a very narrow one, exempting from other California laws acts done and actions taken pursuant to the ratemaking authority conferred by the ratemaking chapter.").

The California Supreme Court's recent analysis of a similar Insurance Code provision is instructive.  *See Villanueva v. Fid. Nat'l Title Co.*, 11 Cal. 5th 104 (2021); Statement of Recent Decision [Dkt. No. 44].  Section 12414.26 of the Insurance Code, governing title insurance, mirrors the language in section 1860.1.  *See id.* at 116 ("Section 12414.26 is not the only provision of its kind; it is one of four nearly identical immunity provisions scattered through the Insurance Code that supplement limited state regulation with partial immunity for specific categories of insurance.") (citing Cal. Ins. Code, §§ 795.7, 1860.1, 11758, 12414.26).  Plaintiffs in *Villanueva* alleged that "the delivery, courier, and draw deed fees added to the [their] escrow statement were illegal because they had never been filed with the Insurance Commissioner."  *Id.* at 111 (citing Cal. Ins. Code §§ 12401.17 and Bus & Prof Code § 17200 et seq.).  Fidelity argued that it was immune from suit under section 12414.26 (analogous to section 1860.1) because other sections of the Insurance Code regulate rates for the business of title insurance and thus the act of charging rates, including unfiled rates, is an act done pursuant to the authority conferred by the Insurance Code.  *Id.* at 110.

The California Supreme Court rejected that argument, finding that courts have "consistently understood the language of these provisions to immunize acts *affirmatively authorized* by the relevant provisions of the Insurance Code, as opposed to acts that are *merely regulated* under those provisions.").  *Id.* at 116 (emphasis added).  It found "nothing in the plain language of section 12414.26 that supports Fidelity's expansive view of its immunity from suit," holding that "statutory immunity does not extend to the charging of unfiled rates because those articles confer no such authority; on the contrary, the referenced articles expressly prohibit the charging of unfiled rates."  *Id.* at 117.

14

Boobuli's and State Farm agree that Boobuli's pre-pandemic premiums were properly charged in accordance with State Farm's approved rate plan; the DOI approved those rates effective December 15, 2018.  RJN, Ex. D at 5–11.  But this lawsuit challenges State Farm's misapplication of approved rates in the present COVID-19 circumstances, an act not affirmatively authorized by the Insurance Commissioner.  The series of Bulletins issued by the Insurance Commissioner, discussed more fully below, indicate that misapplication or misclassification of approved rates is an issue that can be addressed without changes to the underlying approved rate plans.  *See* FAC, Ex. A (2020-3 Bulletin) at 1.

State Farm points out that *Villanueva* distinguished "the automobile insurance rates at issue in *Walker* and *MacKay*," because "title insurance rates need not receive formal approval from the Commissioner, but need only be filed in order to become, after a waiting period, effective.  *Villanueva*, 11 Cal. 5th at 125 (citing Cal. Ins. Code. § 12401.1, 12401.2, 12401.7).  Unlike *Villanueva*, which involved premiums based on unfiled rates, State Farm contends that the premiums here are based on filed and approved rates.  *Villanueva*'s holding is not as limiting as State Farm reads it.  *Villanueva* did not hold that the immunity provision only allows suits challenging conduct that is expressly prohibited in the Insurance Code.  Instead, it held that suits challenging conduct not authorized by the Insurance Code do not receive the cloak of immunity; if the conduct is affirmatively authorized by the Insurance Code, then immunity applies.  That the conduct in *Villanueva* was not only unauthorized but also specifically prohibited, was an added reason why statutory immunity did not extend to Fidelity's conduct.  *See Villanueva*, 11 Cal. 5th at 116 ("Far from being authorized, [the rates charged by Fidelity] are expressly prohibited.").

Relatedly, *Villanueva* rejected Fidelity's interpretation of another insurance case, *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26 (1998), as holding that "so long as the alleged conduct *relates* to ratemaking in some way, it automatically is immunized by section 12414.26."  *Villanueva*, 11 Cal. 5th at 124.  The court found it "simply a logical fallacy to infer from *Quelimane*'s holding — if conduct does not relate to ratemaking, it cannot be immunized by section 12414.26 — that if conduct does relate to ratemaking, it necessarily is immunized by section 12414.26.  *Quelimane* said no such thing, and overreading it in this fashion would lead to

1    results *Quelimane* surely did not intend." *Id.*; *see Quelimane*, 19 Cal. 4th at 42–55 (statute

2    applicable to title insurer, similar to section 1860.1, did not preclude UCL action alleging restraint

3    of trade and false advertising). *Villanueva* supports the conclusion that immunity provisions like

4    section 1860.1 must be narrowly construed. Even if State Farm's alleged conduct relates to

5    ratemaking in some way, that does not mean it is necessarily immunized by 1860.1.

6         This conclusion is supported, although not dictated by, the Insurance Commissioner's

7    response in the *Rejoice!* case.[3] There, the Commissioner confirmed that a suit challenging an

8    insurer's refusal to adjust its premiums to account for changed circumstances posted by the

9    COVID-19 pandemic "does not implicate California Insurance Code section 1860.1" Insurance

10   Commissioner Response ("IC Response"), Dkt. No. 61 in Case No. 20-cv-06789-EMC at 2. The

11   Commissioner explained that section 1860.1 "does not protect unauthorized or unlawful conduct

12   that results in allegedly excessive rates, unfair practices, or misapplied approved rates. As a result,

13   a civil action alleging such conduct is not subject to the Commissioner's exclusive jurisdiction."

14   *Id*. The Commissioner also affirmed "the narrow application of section 1860.1" immunity and

15   explained that section 1860.1 "does not bar private actions to enforce the Unfair Competition Law

16   (Cal. Bus. & Prof. Code §§ 17200 et seq. (UCL)) because a claim under the UCL is originally

17   cognizable in the courts, and section 1860.1 should be interpreted consistently with section

18   1861.03(a), which subjects insurers to the UCL." *Id*.[4]

19        In sum, State Farm's exclusive jurisdiction argument fails because Boobuli's is not seeking

20   to challenge the rate itself, but the misapplication of the rate in light of changed circumstances

21   given the COVID-19 pandemic. There, is, however, an additional wrinkle given the series of

22   Bulletins issued by the Insurance Commissioner. Boobuli's dismisses the notion that it seeks to

23   "enforce the Commissioner's bulletins," although parts of its FAC appear that way. Oppo. 22;

24   *see, e.g.*, FAC ¶ 102 (alleging State Farm breached it duty of good faith by "failing to abide by the

25

26   _____
     [3] *Villanueva*, 11 Cal. 5th at 132 (according "weight to the Commissioner's view").

27   [4] The Insurance Commissioner went further, explaining his view that section "1860.1 establishes a
     narrow immunity that only protects certain antitrust activities." *Id*. at 2. I do not address that
28   issue or rely on that conclusion as persuasive analysis in support of this Order.

United States District Court
Northern District of California

directives issued by the California Department of Insurance"). Instead, it argues that the Bulletins are directed toward the misapplication of existing rates rather than the ratemaking process, and actually direct insurers to remedy this misapplication by adjusting premiums without departing from their existing approved rate plans. The parties dispute whether the Bulletins show that the Insurance Commissioner is exercising its authority over the misclassification and misapplication issue presented in this case or if the issue can and should be decided in a judicial setting.

In some respects, the Bulletins can be read as providing guidance without maintaining authority. The Insurance Commissioner "grant[ed] each insurer *reasonable flexibility* in determining how best to quickly and fairly accomplish the refund or premium to policyholders" and stated that "insurers may take the following actions," *i.e.*, "[r]eclassification of exposure to comport with current exposure" or "reduction of the exposure base," "*without obtaining prior approval* of rates or rules by the [DOI] if done consistent with the insurer's existing rating plan." FAC, Ex. A (2020-3 Bulletin) at 2.[5] On the other hand, the series of Bulletin read together show that the Insurance Commissioner is actively engaged in COVID-19-related premium adjustment, requiring reports from insurers, including State Farm, about their efforts. *Id.* at 3. In his most recent March 2021 Bulletin, the Insurance Commissioner stated that "[m]y prior bulletins [] relied upon insurance companies' judgment to reasonably determine which lines were overcharged premium and the amount of premium to return to policyholders," but "evidence now shows that

_____

[5] Boobuli's cites to the Insurance Commissioner's amicus brief in *Villanueva* in support of its contention that the Commission would not be in a position to manage and oversee the implementation of the refunds for all insurers. *See* Application and Proposed Amicus Curiae Brief by California Department of Insurance in Support of Appellants, in *Villanueva et al. v. Fidelity National Title Company*, 2020 WL 1979401 at 23 ("The Department regulates more than 1,400 insurance companies with over $310 billion in premium revenue. In connection with its regulatory function, it annually reviews over 200,000 complaints and inquiries and over 8,000 rate filings. Given the reality that the Department must budget its resources, private actions under the UCL serve an important role to buttress the Department's enforcement efforts."). While the brief goes on to distinguish why private UCL actions are particularly helpful in the title insurance context, not as issue here, it is still notable that the Insurance Commissioner has taken this position about UCL actions in general. *See id.* ("This is particularly so in the context of title insurance, which is not subject to Proposition 103's extensive rate review system. (See § 1851, subd. (d).) Unlike the rate review system in Proposition 103, title insurance operates under a system the industry colloquially refers to as "file-and-use": rates may be used thirty days after being filed with the Department. ( § 12401.1.) Accordingly, in the title insurance context, because there is less regulatory oversight for title insurers, a greater public participatory oversight benefits consumers.").

many insurance companies fell short." Suppl. RJN, Ex. A (2021-3 Bulletin) at 2-3. In particular, data collected from automobile insurance companies showed that they "did not return enough premiums to drivers." *Id.* at 3. Thus, the Insurance Commissioner "direct[ed] insurance companies to report to the Department information about the additional premium relief that they provide to consumers as our state recovers from this unprecedented economic crisis and global pandemic," with the next report due April 30, 2021. *Id.* at 4.

In a separate press release issued the same day as the 2021-3 Bulletin, not cited by the parties, the Insurance Commissioner added: "We know that for business owners, any savings matters while they are desperately trying to keep their doors open," said Commissioner Lara. "If the data shows that insurance companies overcharged our businesses, *I am going to be mandating them* to return premium, especially to small business that have borne the brunt of pandemic closures." *See* March 11, 2021 Press Release, available at https://www.insurance.ca.gov/0400-news/0100-press-releases/2021/release030-2021.cfm.

This issue was addressed by the Commissioner in the *Rejoice*! Response. The Commissioner explained:

> The bulletins do not affect the interpretation of section 1860.1 or address the application of exclusive jurisdiction in this case. They do not prevent policyholders from commencing an action against insurers for refusing to lower premiums in view of the pandemic. The bulletins arise from the Commissioner's independent authority to enforce the Insurance Code, but that authority, as discussed above, does not preclude the parties from seeking relief in a civil action

IC Response at 7. The Commissioner noted that he "may take action against one or more insurers to enforce his orders requiring the issuance of refunds" and his "review of the sufficiency of the refunds" provided "is ongoing" but that "review in no way precludes [a] Court from adjudicating a UCL claim against an insurer." *Id*.

What, if anything, the Commissioner does with respect to State Farm's reduction or refunds may impact the relief plaintiff or similarly situated policy holders might be able to receive from State Farm. But the scope of relief is premature to consider at this juncture. Defendants' motion to dismiss based on the Commissioner's exclusive jurisdiction is DENIED.

## II.      UNFAIR COMPETITION LAW

State Farm does not raise a separate dismissal argument with respect to the UCL claim other than the exclusive jurisdiction argument addressed above.  As discussed above, Boobuli's UCL claim, challenging State Farm's misapplication of rates, is not within the Insurance Commissioner's exclusive jurisdiction over rate-setting.

The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Each "prong" of the UCL provides a separate and distinct theory of liability.  Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007).  Boobuli's asserts its UCL claim against State Farm under the unfair prong.  It alleges that "California has a long-standing public policy limiting an insurer's ability to impose rates in excess of a fair rate of return on the insured risk, reflected in various statutes and regulations." FAC ¶ 108.  State Farm's "conduct in collecting and retaining premiums for a risk that no longer exists, or has been substantially reduced, violates this vital public policy and the intent of the statutes and regulations designed to ensure that the rates collected by insurers relate to the risk insured and are limited to a fair rate of return on insuring that risk." Id. ¶ 109.  As a result of these unfair practices, Boobuli's and other class members have allegedly "lost money or property and suffered injury in fact," particularly because "Defendants continue to collect and retain premiums in excess of the limitations imposed by California public policy, which rightfully belong to Plaintiff and the Class." Id. ¶ 110.

The UCL claim is plausibly pleaded in the FAC.  State Farm's motion to dismiss the UCL claim is DENIED.

## III.     BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

The covenant of good faith and fair dealing is implied in every contract and, in most situations, prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract.  Ellsworth, 908 F. Supp. 2d at 1085.  "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." Id. at 1086 (quoting Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal.4th 342, 372, (1992)).

United States District Court
Northern District of California

1   "The exercise of discretionary powers is evaluated under the implied covenant to assure that the

2   promises of the contract are effective and in accordance with the parties' legitimate expectations."

3   *Id.* (quoting *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 956-57

4   (N.D. Cal. 2012)).  The covenant does not "prohibit a party from doing that which is expressly

5   permitted by an agreement. On the contrary, as a general matter, implied terms should never be

6   read to vary express terms."  *Carma*, 2 Cal.4th at 374.

7        Boobuli's alleges that State Farm breached the implied covenant of good faith and fair

8   dealing "by, inter alia, (1) unreasonably failing to exercise its discretion to audit Plaintiff's policy

9   at any time and to make adjustments to Plaintiff's premiums; (2) failing to return excess premium

10  payments at the end of Plaintiff's policy year; (3) failing to take actions directed by the California

11  Department of Insurance regarding the refund of Plaintiff's premiums; (4) failing to adhere to the

12  representations State Farm itself made to the Department of Insurance; and (5) failing to provide

13  Plaintiff with the directed notice of State Farm's obligation to provide premium relief."  FAC ¶ 88

14  (allegations with respect to the 2019 Policy); *see also id.* ¶ 102 (similar allegations for the 2020

15  Policy)

16       State Farm contends that Boobuli's claim rests on a false premise that the Policies allow

17  for, or even require, downward adjustments to premium if circumstances change during the policy

18  period.  MTD 18.  Unlike the policy at issue in *Rejoice!*, State Farm argues that Boobuli's Policies

19  do not provide for an auditable premium; rather, the premium is fixed and not an estimate.  It also

20  disagrees that the "Examination of Your Books and Records" and "Premiums" provisions of the

21  Policies support Boobuli's allegations.

22       Boobuli's responds that its claims do not depend on reading into the Policies' provisions or

23  contractual requirements that are not there.  Oppo. 17.  As State Farm concedes, it "always has the

24  discretion to make voluntary downward premium adjustments based on an insured's changed

25  circumstances," and that is exactly what Boobuli's challenges here.  MTD 19 n.11.  That no

26  provision in the Policies necessarily *requires* it to make a downward adjustment does not defeat

27  Boobuli's breach of covenant claims.  Relatedly, a dispute about whether certain provisions of the

28  Policies necessarily allow State Farm's alleged conduct is not enough to warrant dismissal at the

United States District Court
Northern District of California

20

1   pleadings stage. *See McNeary-Calloway*, 863 F. Supp. 2 at 956 (because the court could "not say

2   that the contracts' terms unambiguously authorize Defendants' alleged behavior, the Court denies

3   Defendants' motion to dismiss the California Plaintiffs' breach of contract claim.").

4        State Farm distinguishes *Parducci v. Overland Solutions, Inc.*, 2019 WL 6311384 *8-9

5   (N.D. Cal. 2019) and *King. v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 940 (N.D. Cal. 2015) on

6   grounds that both involved premium calculations alleged to be inconsistent with the relevant

7   policies and/or rate filings.  But here, Boobuli's admits that State Farm General charged premiums

8   calculated pursuant to approved rates.  Boobuli's claim is not simply that State Farm applied the

9   approved rate, it is that State Farm applied the approved rate during changed circumstances, when

10  it should have used its discretion, in good faith, to make the appropriate adjustments.[6]

11       State Farm's motion to dismiss the implied covenant claim is DENIED.

12  **IV.   UNJUST ENRICHMENT**

13       To the extent that State Farm asserts that there is no standalone cause of action for unjust

14  enrichment, I find that argument unconvincing.  *See Astiana v. Hain Celestial Group, Inc.*, 783

15  F.3d 753, 762 (9th Cir. 2015) (courts may construe an unjust enrichment claim as a quasi-contract

16  claim seeking restitution).  Its alternative argument is that a claim for unjust enrichment "does not

17  lie when an enforceable, binding agreement exists defining the rights of the parties," citing

18  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

19       The alternative argument does not warrant dismissal at the pleadings stage either.  State

20  Farm's position was rejected in *United States ex rel. Begole v. Trenkle*, 2010 WL 11596170, at

21  *11–12 (C.D. Cal. July 16, 2010), where the defendant similarly relied on *Paracor* to argue that an

22  unjust enrichment claim must be dismissed at the pleadings stage.  The court found that

United States District Court
Northern District of California

---

[6] In a footnote, Boobuli's argues that State Farm's failure to adjust the renewal premium to
comply with the Commissioner's Bulletins in itself constituted a breach of the implied covenant.
Oppo. 18 n. 3.  State Farm argues that this claim fails because the Bulletins are not part of
Boobuli's Policies, and thus cannot be the basis for an implied contractual obligation between the
parties, and to the extent that it can, its decision to apply a 40% reduction after September 2020 is
appropriate under the "reasonable flexibility" granted by the Insurance Commissioner.  Reply 10
n.3.  I agree that Boobuli's cannot rest the implied breach of covenant claims based solely on the
Bulletins because "any potential implied covenant claim must be based on the obligations and
duties of the parties' contract."  *Hilario v. Allstate Ins. Co.*, No. 20-CV-05459-WHO, 2020 WL
7643233, at *5 (N.D. Cal. Dec. 23, 2020).

United States District Court
Northern District of California

1    defendant's reliance on *Paracor* was misplaced because "[i]n *Paracor*, the court reviewed whether

2    an unjust enrichment claim could be maintained when a summary judgment adjudication

3    determined an enforceable contract existed between the parties." *Id.*  The plaintiff in that case, as

4    Boobuli's does here, "allege[d] a contract existed between the parties, but since the case [was] still

5    in the initial pleading stage, there [had] been no finding that a contract exists." *Id.*  "Accordingly,

6    as there may not be an enforceable contract between Plaintiff and Defendants, *Paracor* does not

7    apply, and Plaintiff can maintain her unjust enrichment claim."  State Farm's "interpretation of

8    *Paracor* effectively eliminates alternative pleadings under Federal Rule of Civil Procedure 8(d)(2)

9    and inconsistent pleadings under Rule 8(d)(3)." *Id.*; *see also Professor Brainstorm, LLC v.

10   Aronowitz*, 2009 WL 10675891, at *3 (C.D. Cal. Dec. 8, 2009) ("However, unlike the cases

11   above," including *Paracor*, "this case is at the pleading stage.  At this stage, the Court has yet to

12   determine what remedies are available.  It would be improper to exclude the quasi contract claim

13   on the basis that it cannot co-exist alongside a contract remedy because the Court has yet to

14   determine whether a contract remedy is available to Plaintiff.  Therefore, the Court DENIES

15   Defendant's Motion to Dismiss Plaintiff's unjust enrichment claim.").[7]

16        State Farm's motion to dismiss the unjust enrichment claim is DENIED.

17   **V.    STATE FARM MUTUAL AS A DEFENDANT**

18        State Farm argues that Boobuli's has sued the correct insuring entity, State Farm General,

19   in its FAC, but it improperly names its parent entity, State Farm Mutual, which is neither party to

20   the Policies nor itself a contracting entity.  MTD 21.  Boobuli's responds that it is not required to

21   plead that it paid funds directly to State Farm's parent entity to show entitlement to restitution as

22   remedy under its UCL claim.  Oppo. 24.  Instead, "the notion of restoring something to a victim of

23   unfair competition includes two separate components: the offending party must have obtained

24   something to which it was not entitled and the victim must have given up something which he or

25

26   [7] Judge Corley in *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 910
     (N.D. Cal. 2020) cited *Paracor* in dismissing the unjust enrichment claims pleaded in that case.

27   However, the unjust enrichment claim was primarily dismissed because "the Virus Exclusion
     applie[d] as a matter of law" and dismissed "for the additional reason that an action in quasi-

28   contract does not lie 'when an enforceable, binding agreement exists defining the rights of the
     parties.'" *Id.* (quoting *Paracor*, 96 F.3d at 1167).

1    she was entitled to keep." *Day v. AT&T*, 63 Cal.App.4th 325, 340 (1998).

2         I agree that "[p]laintiffs simply need to allege that [defendants] obtained money (or

3    property) and that plaintiffs lost money or property as a result of defendants' unfair practices." *In

4    re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, 2020 WL 6271173, at *55 (N.D.

5    Cal. Oct. 23, 2020) (citing *Cabebe v. Nissan of N.A.*, Inc., 2018 WL 5617732, at *5 (N.D. Cal.

6    Oct. 26, 2018).  The problem here is that Boobuli's has not alleged that State Farm Mutual

7    obtained something to which it was not entitled.  It only names State Farm Mutual as a party,

8    defines "State Farm" as "State Farm General and State Farm Mutual" and then adds State Farm

9    Mutual's name to the cause of action headings.  *See* FAC ¶ 17.

10        Boobuli's relies on *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1342 (2009),

11   where the plaintiff filed a class action against Farmers Group, Inc. under the UCL, seeking

12   restitution of undisclosed service charges paid to Farmer's subsidiary, Prematic.  Farmers appealed

13   the award of restitution under the UCL because Prematic, not Farmers, was the direct recipient of

14   the service charges.  *Id.* at 1338.  The California Court of Appeal affirmed, holding that it is not

15   essential that money be paid directly to the recipient by the party seeking restitution. *Id.* at 1339.

16   Because Prematic was acting as Farmer's wholly owned subsidiary in collecting premiums and

17   service charges, the trial court did not abuse its discretion in finding that Farmer's benefited from

18   those payments. *Id.* at 1340-1341.

19        By contrast, Boobuli's has not alleged that State Farm General was acting as State Farm

20   Mutual's wholly owned subsidiary or that the two acted as a "single enterprise" or had an agency

21   relationship. *See id.* at 1342 ("Based on our review of the undisputed facts, we conclude there is

22   substantial evidence to support the trial court's finding that FGI, FIE, and Prematic acted as a

23   single enterprise and therefore FGI and FIE may be liable for UCL restitution").  It simply named

24   State Farm General's parent entity as a defendant in the FAC and nothing else.

25        State Farm's motion to dismiss State Farm Mutual as defendant is GRANTED with leave

26   to amend.

27                                    **CONCLUSION**

28        State Farm's motion to dismiss claims against State Farm Mutual is GRANTED with leave

                                            23

1   to amend by October 25, 2021.  The motion is otherwise DENIED.

2

3       **IT IS SO ORDERED.**

4   Dated: October 5, 2021

5

6                                                    _____
7                                                    William H. Orrick
                                                     United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28